## HENRY H. J. GUNTHER v. LOUIS A. COLIN.

By a bill of lading of one hundred casks of wine to be shipped from Bordeaux to New York, it was stipulated to deliver the same all full and in good condition, the perils and risks of the sea excepted. By reason of rough weather and heavy seas encountered on the voyage, eleven of the casks were found, on arrival, to have leaked, and to be of little or no value. *Held*, that no negligence being shown, the freight was earned.

Since the passage by Congress of the Act of 1857 (11 Stat. at Large, 163) by which all former statutes declaring foreign coins to be legal tender for debt were repealed, there is no legal par value of foreign coin for commercial purposes, except as established by the usage of merchants or the actual market value of the coin.

A bill of lading made in France, declared the freight to be "thirty francs in gold," &c., payable on delivery of goods in New York. *Held*, that the carrier, in an action for the freight, was entitled either to the coin or to its equivalent in United States currency.

APPEAL by the defendant from a judgment of the general term of the Marine Court affirming a judgment entered on the verdict of a jury at trial term.

The action was brought to recover freight on 100 casks of wine, which the plaintiff agreed to carry from Bordeaux to New York. The bill of lading admitted the receipt of the casks of wine all full and in good condition, and stipulated to deliver them in *the same form*, the perils and risks of the sea excepted, on being paid the freight, thirty francs in gold, with ten per cent. per ton primage over and above average, according to the uses and customs of the sea. On the arrival of the vessel at New York, it appeared that eleven of the casks were of little or no value, owing to the rough weather and heavy sea experienced. It also appeared that 825 francs, the freight sued for, was equivalent to the sum of $375.37 in United States currency.

The justice charged the jury "that if the jury believed from the evidence that the leakage of the wine was caused by bad stowage of the cargo or by the neglect or misconduct of the plaintiff, that then he could not recover freight on the empty

casks, and that the defendant was entitled to recover and set off the value of the wine, which in their opinion was proved to have been lost. But if the jury believed that there was no misconduct or negligence on the part of the plaintiff, and if they believed that the stowage of the casks was good and proper, the plaintiff should recover his freight, which was shown to amount to 825 francs, which was shown to be equal to $375.37 in United States currency."

The jury found a verdict for the plaintiff for $375.37, and from the judgment of affirmance of the judgment entered thereon the defendant appealed to this court.

*William D. White*, for appellant.

*Nathan Solomon*, for respondent.

BY THE COURT.—BRADY, J.—The plaintiff carried the freight and delivered it in pursuance of his contract. He conducted himself with fidelity and vigilance during the voyage, and was not guilty of negligence in any respect. His engagement was performed, and he was entitled to the compensation agreed upon, notwithstanding there was a deficiency in the freight (*Griswold* v. *N. Y. Ins. Co.*, 3 Johns. 319).

The contract of carriage was made on or about the 30th of June, 1864, and by it the plaintiff was to deliver the goods, the perils and risks of the sea being excepted, on being paid his freight, thirty francs in gold, per ton, with ten per cent. primage over and above average, according to the uses and customs of the sea. The defendant insisted upon this branch of the case, and it is the only one remaining to be considered, that as the freight was payable in francs, and the Act of Congress fixed the real value of gold francs in the current money of the United States, the plaintiff was only entitled to such value in legal tenders. This proposition cannot be maintained. Whatever may have been the legislative provisions in reference to foreign coins for purposes of commerce, and to which it is not necessary to refer particularly, the Act of 1857 (11 Stat. 163), repealed all former acts declaring them a legal tender in payment of debt, the effect

of which is to continue the acts in reference to their value then existing only for the guidance of the officers of the United States connected with the custom-houses.* There was, therefore, from the time of the passage of the Act of 1857, no legal par value of a franc for commercial purposes, except as established by the usage of merchants thereto relating, or the actual market value of the coin. The franc was shown to be worth 45½ cents of our currency, and the plaintiff recovered on that basis. This case is relieved of embarrassment by the words of the contract of carriage. The plaintiff was to deliver, on the payment of 30 francs, in gold, and could have declined to surrender the freight until paid for in the manner provided by the contract, which was in francs in gold. The mode of payment' was not unreasonable or impossible. Having delivered the freight, he is entitled to a sum in the currency of this country which shall approximate nearer to the amount which he would be obliged to pay for the francs calculated by the real par (Story on Con. 309–310; *Smith* v. *Shaw*, 2 Wash. C. C. Rep. 167; *Grant* v. *Healey*, 3 Sumner's Rep. 523; *Lee* v. *Wilcocks*, 5 Serg. & Rawle, 48). In other words, being entitled to a number of francs, the defendant should either give him the coin or its equivalent in currency. This rule is just in all cases of contracts made abroad and payable here in the currency or coin of the foreign country, and more particularly in a case like this, when, at the time the contract was made, the currency of this country was depreciated, and the parties may be presumed to have contracted with reference to that circumstance. This distinction is suggested in *Rodes* v. *Bronson* (34 N. Y. 649), in which the Court of Appeals held that a mortgage executed in 1851, to be paid in 1857, in gold or silver coin, *lawful money of the United States*, might be paid in legal tender notes under the Act of February 25, 1862 (12 Stat. 345). Smith, J., said, p. 656: "The case of an agreement made since the Act of 1862, for the payment of a specified sum in coin in consideration of a loan in coin, or upon any other *equivalent consideration*, and in view of the difference in market value existing at

---

* See Guiteman *v.* Davis, *ante*, p. 120.

the time between coin and Treasury notes having the same legal
value, may differ materially from the present case." His sug-
gestion is based upon the supposition of a contract made in this
State, or country, and, if it have any value, must with greater
force apply to contracts of a similar character made abroad.
The cases of *Martin* v. *Franklin* (4 Johns. 124), and *Scofield*
v. *Day* (20 Johns. 102), do not conflict with the conclusion ex-
pressed herein, the contract between the parties hereto being
kept in view. It must be said of these decisions that they were
delivered when foreign coins were legal tenders, and, if they
are to be followed, should not be extended, but confined to
cases precisely like them. The great changes produced by legis-
lation since they were rendered, and those resulting from the
late war, in values of our currency and those of foreign coin
and currency, render this restriction a duty. They are not
justly adapted to the condition of existing affairs. The judg-
ment should be affirmed.

Judgment affirmed.